IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| JOSEPH BERNARD DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 315-032 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Joseph Bernard Davis appeals the decision of the Acting Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

## I.     BACKGROUND

Although Plaintiff has now turned eighteen years old and appears on his own behalf, his mother applied for SSI on his behalf on November 12, 2009, alleging disability from severe attention deficit hyperactive disorder (ADHD), severe depression, and suicidal thoughts, with a stated onset date of January 1, 2004. Tr. ("R."), pp. 20, 209-11, 309, 319. At the time of the

application in 2009, Plaintiff was thirteen–years old, classified as an adolescent child under Social Security regulations, and was still classified as an adolescent at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration by the Court. R. 20; 20 C.F.R. § 416.926a. The Social Security Administration denied the SSI application initially and on reconsideration. R. 117-20, 130-33. Plaintiff requested a hearing before the ALJ, R. 134-36, and the ALJ held a hearing on August 17, 2011. R. 57-85. Represented by counsel, Plaintiff and his mother appeared and testified at the hearing. The ALJ then issued an unfavorable decision dated August 30, 2011, in which he determined Plaintiff had several severe impairments, but did not meet or equal a listed impairment. R. 89-108.

Plaintiff then requested that the Appeals Council ("AC") review the ALJ's decision, arguing the ALJ erred in failing to find he met Listing 112.05D, relating to Intellectual Disability. R. 458-60. The AC vacated the August 30, 2011 decision and remanded the case back to the ALJ for "an adequate evaluation of the claimant's mental impairments at step two of the sequential evaluation process." R. 110. Specifically, the AC concluded the ALJ had not adequately addressed the nature and severity of Plaintiff's mental impairments, including failing to discuss IQ scores in the sixty to seventy range, and to address a treating source opinion that Plaintiff's mental functioning is consistent with mild mental retardation. R. 110.

On remand, the ALJ held a second hearing. Represented by counsel, Plaintiff and his mother appeared and testified. R. 45-56. In a second opinion, dated August 19, 2013, the ALJ determined Plaintiff was not disabled. R. 14-35. Applying the three-step sequential process required by 20 C.F.R. § 416.924(a), the ALJ found:

1. The claimant has not engaged in substantial gainful activity since November 12, 2009, the application date (20 C.F.R. §§ 416.924(b) and 416.971 *et seq*.).

2

2. The claimant has the following severe impairments: ADHD; borderline intellectual functioning; major depressive disorder; and learning disability and mood disorder (20 C.F.R. § 416.924(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 C.F.R. §§ 416.924(d) and 416.926(a)). Thus, the claimant has not been disabled, as defined by the Social Security Act, since November 12, 2009, the date the application was filed (20 C.F.R. § 416.924(c)).

R. 20-29.

When the AC denied Plaintiff's request for review of the second ALJ decision, R. 4-10, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Having failed to convince the AC to review his case a second time, Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ relied on an unacceptable medical source to support his decision Plaintiff did not meet Listing 112.05C or 112.05D; and (2) the ALJ failed to comply with the AC's remand order. See doc. no. 12 ("Pl.'s Br."). The Commissioner maintains the administrative decision is supported by substantial evidence and the ALJ "adequately complied" with the AC's remand order. See doc. no. 13 ("Comm'r's Br.").

## II. DISCUSSION

### A. Standard of Review

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439

3

(11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether

correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### B. The Three-Step Sequential Process to Evaluate Disability in Children

A three-step sequential process is used to determine whether a child is disabled. 20 C.F.R. § 416.924. At the first step, the Commissioner must determine whether the claimant is engaging in substantial gainful activity; if so, the claim is denied. Id. § 416.924(b). At the second step, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments; if the claimant does not have any severe impairments, the claim is denied. Id. § 416.924(c). At the third and final step, the Commissioner must determine whether the claimant's impairments meet, medically equal, or functionally equal the Listings. Id. § 416.924(d). If the claimant does not have an impairment that meets, medically equals, or functionally equals the Listings, he will not be found disabled. Id. § 416.924(d)(2).

In this case, Plaintiff contends the ALJ relied on an unacceptable medical source in determining that Plaintiff's IQ score did not satisfy the requirements of Listing 112.05C or 112.05D. Listing 112.05C requires a valid verbal, performance, or full scale IQ of fifty-nine or less. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05C. Listing 112.05D requires a valid verbal, performance, or full scale IQ of sixty through seventy and a physical or other mental impairment imposing an additional and significant limitation of function. Id. § 112.05D. Although Plaintiff cites Listing 112.05C and 112.05D in his briefing, he only offers argument concerning Listing 112.05D. Thus, the Court will likewise confine its analysis to Listing 112.05D.

## C. Weight Afforded to Sources Used to Evaluate Impairments

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

Furthermore, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5). Sources who can provide evidence to establish an impairment include licensed or certified psychologists, including "school psychologists, or other licensed or certified individuals with other titles who perform the same function as a

school psychologist in a school setting, for purposes of establishing intellectual disability, learning disabilities, and borderline intellectual functioning only." 20 C.F.R. §§ 404.1513(a)(2) & 416.913(a)(2).

### D. An Acceptable Medical Source Administered the IQ Test from 2003 Cited by the ALJ.

In his decision, the ALJ discounted IQ scores from 2006 (full scale sixty-eight), 2008 (full scale sixty-six), and 2010 (full scale sixty), in favor of a score of eighty-three obtained from testing performed in 2003 when Plaintiff was in kindergarten. R. 20-21, 23, 403-06, 531-37, 625-35, 666-72. According to Plaintiff, the ALJ erroneously relied on the eighty-three IQ score because the record does not state the capacity in which Suzanne Moore, the person who administered the test in 2003, gave her results. Pl.'s Br., pp. 8-9. "In other words, the record does not state whether she is a licensed psychologist, whether she is a certified psychologist or whether she is a school psychologist. Her opinion can be given no more weight than that of a lay person." Id. at 8. Thus, according to Plaintiff, the ALJ's reliance on an eighty-three IQ score provided by a "lay person" is invalid to support the conclusion that he does not meet the sixty to seventy IQ range required to satisfy the first part of Listing 112.05D.

Plaintiff contends Ms. Moore's title is not evident from the record, and therefore her opinion on Plaintiff's IQ score is entitled to no more weight than that of a lay person. To the contrary, Ms. Moore is identified as a school psychologist. R. 417, 419. "[S]chool psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting" qualify as sources who can provide evidence to establish an impairment. 20 C.F.R. §§ 404.1513(a)(2) & 416.913(a)(2). Plaintiff's argument that Ms. Moore's opinion is entitled to no more weight than that of a lay

7

person is incorrect and forms no basis for reversal remand. Thus, the Court next turns to the question of whether reliance on Ms. Moore's IQ scores obtained in kindergarten satisfied the dictates of the AC remand order to perform an adequate evaluation of claimant's mental impairments.

### E. The ALJ Failed to Comply with the AC's Remand Order.

In his second argument, Plaintiff argues the ALJ erred as a matter of law because he failed to comply with the instructions in the AC's remand order. Specifically, Plaintiff claims the ALJ failed to obtain additional evidence concerning Plaintiff's impairments. Pl.'s Br., pp. 10-11. The ALJ could have, but did not, order a consultative examination, send an interrogatory to examining psychologist Marvin Long, Ph.D, to clarify his opinion on Plaintiff's IQ scores, and/or obtain evidence from a medical expert. Id. at 11. The Commissioner responds with a contention there was "adequate compliance" by the ALJ and appears to suggest that because the AC refused review of the second opinion, the issue must be settled that the ALJ complied with the remand order. Comm'r's Br., pp. 9-12. The Court disagrees.

When a case is remanded by the AC to the ALJ, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b) & 416.1477(b) (emphasis added). Failing to follow the terms of the remand order is a legal error that requires this Court to remand the case to the Commissioner. Apone v. Comm'r, Soc. Sec. Admin., 435 F. App'x 864, 865 (11th Cir. 2011); Ross v. Comm'r of Soc. Sec., No. 6:12-cv-959-Orl-22GJK, 2013 WL 5236680, at *2-3 (M.D. Fla. Sept. 17, 2013); Dunbar v. Comm'r of Soc. Sec., CV 104-114, doc. no. 15 (S.D. Ga. Sept. 26, 2006) (Bowen, J.).

8

Turning to the details of the remand order in this case, the AC vacated the first decision and remanded the case because of unresolved issues related to Plaintiff's mental impairments. The AC found the ALJ determined Plaintiff had borderline intellectual functioning but did not address the competing diagnosis of mild mental retardation. R. 110. The ALJ also failed to discuss IQ scores within the sixty to seventy range, as well as the opinion of a treating source, James A. Kibler, M.D., that stated in 2009 Plaintiff's mental functioning is consistent with mild mental retardation. Id. In light of these multiple errors, the AC determined "[f]urther evaluation of the nature and severity of the claimant's mental impairments is warranted." Id.

To address these errors, the AC listed three things that the ALJ "will" do:

1. Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 C.F.R. § 416.912-913). The additional evidence may include, if warranted and available, a mental status examination and medical source statements about what the claimant can still do despite the impairments.

2. If warranted, obtain evidence from a medical expert to clarify the nature, severity, and limiting effects of the claimant's mental impairments (20 C.F.R. 416.927 and Social Security Ruling 96-6p).

3. Further evaluate the claimant's impairments in accordance with the sequential evaluation process described in 20 C.F.R. § 416.924.

R. 110-11.

As described above, Social Security regulations state the ALJ shall take any action ordered by the AC, 20 C.F.R. §§ 404.977(b) & 416.1477(b), but the Commissioner attempts to argue that because the AC stated the ALJ "will," rather than "shall," obtain additional

9

evidence, the AC gave the ALJ discretion to decline to obtain any of the evidence suggested by Plaintiff in his briefing as necessary for compliance with the remand order. Comm'r's Br., p. 9. The Commissioner's argument fails to persuade the Court an ALJ is somehow excused from the mandatory language of the regulations if the remand order states an ALJ "will," rather than "shall," take a certain action.

This case falls squarely within the line of cases taking the long view of AC remand orders and focusing on the overall intent of an AC remand order rather than parsing phraseology that, when read in isolation, might be viewed as allowing an ALJ discretion to pick and choose among directions from the AC. See, e.g., Tauber v. Barnhart, 438 F. Supp.2d 1366, 1375-76 (N.D. Ga. 2006) (finding direction from AC that ALJ "will further develop the record" regarding demands of past relevant work required ALJ to specifically consider area identified as deficient in original opinion and failure to do so is reversible error).

The Commissioner attempts to explain away the ALJ's failure to obtain additional information about Plaintiff's IQ by pointing out that a claimant has the burden of proving his disability and is responsible for providing evidence in support of his claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Thus, the Commissioner appears to suggest that the ALJ was not required to obtain additional information, such as order a consultative examination regarding Plaintiff's level of mental functioning, because Plaintiff should have provided new and additional information when he appeared at the second hearing. Nevertheless, "because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." Larry v. Comm'r of Soc. Sec., 506 F. App'x 967, 969 (11th Cir. 2013) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

10

In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to obtain additional information by ordering a consultative examination unless the record establishes that such an examination is necessary to enable an ALJ to render an informed decision. Ingram v. Comm'r of Soc. Sec. Admin, 496 F.3d 1253, 1269 (11th Cir. 2007); Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999); Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). This is not a case where there is no objective evidence suggesting Plaintiff may suffer from some type of intellectual impairment. Cf. Parker v. Colvin, CV 213-137, 2014 WL 2855047, at *4 (S.D. Ga. June 23, 2014) (Wood, C.J.) (finding no error in failing to appoint psychiatrist or psychologist or order consultative examination when claimant offered no objective evidence suggesting mental or emotional impairment). Indeed, the ALJ had in hand a remand order from the AC that specifically (1) found an adequate evaluation of Plaintiff's mental impairment had not been conducted, (2) noted the existence of IQ scores in a range that could satisfy one prong the relevant Listing, and (3) identified a treating source's opinion of mental functioning in the mild mental retardation range that had not been addressed.

Even assuming for the sake of argument that everything the ALJ said about the three sets of IQ scores from 2006, 2008, and 2010 satisfied the requirements for explaining why they were not valid scores,[1] the lack of valid, current information created an evidentiary gap. Rather than obtain an updated consultative examination concerning Plaintiff's mental functioning as he approached seventeen years of age, the ALJ relied on IQ scores obtained when Plaintiff was in kindergarten, approximately eight months prior to the alleged onset

---

[1] Indeed, all three sets of scores contained cautionary language that the overall IQ score should be viewed with caution based on wide ranging variances between domains. R. 21, 534-37, 629-32, 667.

11

date, to determine his level of mental functioning. R. 209, 403. Moreover, although the Commissioner points to discrepancies within the various portions of the discounted IQ scores, (Comm'r's Br., pp. 5-6), there is no allegation of lack of effort or other purposeful misdirection to suggest that more testing might not prove informative for an ALJ tasked with evaluating Plaintiff's mental functioning. For example, in the 2006 testing, Plaintiff was distracted because he wanted to join his classmates at recess, (R. 667), and in 2010, Dr. Long noted that he "got better participation today" than during the 2008 testing, (R. 627).

In addition, the AC specifically directed the ALJ to address the opinion of treating source James A. Kibler, M.D., who indicated in 2009 that Plaintiff's mental functioning was consistent with mild mental retardation. R. 110, 622. In the opinion after remand, the ALJ mentioned Dr. Kibler by name only once and did not identify him as a treating source. R. 20. The ALJ did not, as did the AC, acknowledge Dr. Kibler's opinion that Plaintiff's mental functioning was consistent with mild mental retardation. The ALJ simply recounted Dr. Kibler's statements concerning Plaintiff's school progress and problems, including that Plaintiff should qualify for special education classes. R. 20. Given that Plaintiff's disability hinges on his mental functioning, and given that Dr. Kibler saw Plaintiff in 2009 – in the midst of a string of IQ scores the ALJ discounted but would have satisfied at least the first part of Listing 112.05D – the ALJ's failure to do more than parrot a select portion of Dr. Kibler's opinion is particularly puzzling.

Finally, the ALJ did not, as is required by the Eleventh Circuit case law described above, assign weight to this treating source's opinion. Thus, the ALJ's failure to properly address Dr. Kibler's opinion on mental retardation forms yet another basis for remand to the Commissioner. See Williams v. Comm'r of Soc. Sec., No. 6:11-cv-1355-Orl-GJK, 2013 WL

451331, at *9 (M.D. Fla. Feb. 6, 2013) ("[E]ven if the Appeals Counsel had not directed the ALJ to consider and weigh the findings and opinions reflected in [an examining physician's] medical records, the failure to state with particularity the weight given to such evidence and the reasons therefore constitutes reversible error. See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011)").

The Court simply cannot agree that under these circumstances, the ALJ "adequately complied" with the AC's remand order.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 10th day of March, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA